IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SAVANNAH COLLEGE OF ART AND DESIGN, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CIVIL ACTION |
| v. | ) | FILE NO. _____ |
| | ) | |
| SPORTSWEAR, INC. d/b/a PrepSportswear, | ) ) | **JURY DEMAND** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **COMPLAINT**

Plaintiff Savannah College of Art and Design, Inc., ("SCAD" or "Plaintiff"),

for its Complaint against Sportswear, Inc. d/b/a PrepSportswear ("Sportswear" or

"Defendant") states as follows:

1.

This is an action for damages, injunctive relief, attorney's fees, costs, and

interest under the Lanham Act - 15 U.S.C. §§ 1051-1127, and O.C.G.A. § 10-1-

372.

## PARTIES

2.

Plaintiff SCAD is a non-profit educational corporation duly organized and existing under the laws of Georgia.  SCAD operates an educational institution in this judicial district with a principal address of 1600 Peachtree St. NE, Atlanta, GA 30309 (with other facilities in Atlanta).

3.

Upon information and belief, Defendant Sportswear is a corporation formed under the laws of Washington with a principal place of business at 2211 Elliot Avenue, Suite 601, Seattle, Washington, 98121.

## JURISDICTION AND VENUE

4.

Upon information and belief, Defendant markets and sells products in the State of Georgia and to Georgia residents, and actively conducts business in the State of Georgia and within this judicial district.

5.

This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1114, 1116(a), 1121, and 1125(a) and 28 U.S.C. §§ 1331, 1338, and 1367.

6.

Jurisdiction and venue are proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), and O.C.G.A. § 9-10-91.

7.

By way of example, Sportswear provides an interactive website that is accessible in Georgia and in this judicial district at:

> http://www.prepsportswear.com/college/us/Georgia/Savannah-College-of-Art-and-Design-Bees.aspx?schoolid=2065029.

8.

Sportswear's website demonstrates that goods with the names and/or logos of over 100 different colleges and universities located in Georgia, and many within this judicial district (such as Agnes Scott College, Atlanta Technical College, Clark Atlanta University, Columbia Theological Seminary, DeKalb Technical College, Emory University, John Marshall Law Atlanta, Kennesaw State University, Life University, Morehouse College,  and Southern Polytechnic State University) may be purchased on that website (http://www.prepsportswear.com/college_directory/us/Georgia.aspx).

9.

Sportswear uses this website to target customers and conduct business in

Georgia and this judicial district.   Among other things, this website allows customers to order goods bearing SCAD's registered marks (the "Infringing Goods").

## **FACTUAL BACKGROUND**

### 10.

SCAD is an independent, nonprofit university with campuses in Atlanta, Georgia; Savannah, Georgia; Hong Kong; and Lacoste, France.

### 11.

SCAD was founded in 1978 by Richard G. Rowan, Paula Wallace, May L. Poetter and Paul E. Poetter.

### 12.

SCAD has more than 11,000 students from all 50 states and more than 100 countries.

### 13.

SCAD has used SCAD and SAVANNAH COLLEGE OF ART AND DESIGN as its trade names, trademarks, and service marks continuously and substantially exclusively since its creation.

### 14.

SCAD has also used a mark consisting of a bee in the middle of a circle

4

containing the words SAVANNAH COLLEGE OF ART AND DESIGN BEES.
The Bee is the mascot of SCAD.



15.

SCAD is the owner of all rights, title, and interest in U.S. Trademark
Registration No. 2,686,644, for the mark SCAD, as described above and shown in
Exhibit A.  This mark was first used in commerce as early as 1979.

16.

SCAD is the owner of all rights, title, and interest in U.S. Trademark
Registration No. 2,918,888, for the mark SAVANNAH COLLEGE OF ART AND
DESIGN, as described above and shown in Exhibit B. This mark was first used in
commerce as early as 1979.

17.

SCAD is the owner of all rights, title, and interest in U.S. Trademark
Registration No. 3,118,809, for the mark SAVANNAH COLLEGE OF ART AND
DESIGN FOUNDED 1978, as shown in Exhibit C.  This mark was first used in

commerce as early as 1997.

18.

SCAD is the owner of all rights, title, and interest in U.S. Trademark Registration No. 3,751,493, for the mark SAVANNAH COLLEGE OF ART AND DESIGN BEES, as described above and shown in Exhibit D.  This mark was first used in commerce as early as 2001.

19.

Additionally, in light of SCAD's use of these marks, described above and shown in Exhibits A – D (collectively the "SCAD Marks"), on apparel for many years, SCAD has significant common law rights in these marks in connection with apparel and related goods.

20.

The SCAD Marks are non-functional, and the public recognizes and understands that these marks distinguish and identify goods and services produced, sold, licensed or sponsored by SCAD.

21.

For many years, SCAD has extensively and continuously used and promoted the SCAD Marks in connection with its goods and services.

22.

SCAD has expended great effort and large sums of money in making its SCAD Marks well-known to the public.  SCAD has established a reputation for excellence, quality, and reliability in connection with the goods and services it provides in conjunction with the SCAD Marks.

23.

As a result of SCAD's efforts and substantial expenditures, and as a result of SCAD's superior reputation, SCAD enjoys virtually universal recognition of its SCAD Marks in connection with its goods and services.

24.

The SCAD Marks have become well-known and are instantly recognizable to the public as being associated with the goods and services provided by or affiliated with SCAD.

25.

Registration Nos. 2,918,888, 3,118,809, and 3,751,493 have achieved incontestable status.

26.

Without any sponsorship, approval, or permission from SCAD, Sportswear uses its website to target customers, and it offers to sell goods bearing the SCAD

Marks.

27.

On information and belief, Sportswear is in the business of printing and selling apparel and related goods featuring the insignias of what appear to be hundreds of colleges, universities, schools, sports teams, and other institutions.

28.

Among the hundreds of "apparel stores" on Sportswear's website are stores that display goods for sale bearing the SCAD Marks standing alone or in conjunction with additional words or phrases.

29.

Each "Apparel Store" offers pull-down menus under headings such as "Store Home," "Men," "Women," "Kids," "Hats," "Skins & Decals," "Accessories," "Sports," etc. Each pull-down menu, in turn, offers a wide-range of categories of insignia wear, such as "Tshirts," "Sweatshirts," "Polos," "Warm Ups," "Bottoms," and the like. If a user clicks on any of the sub-categories of products, they are presented with dozens of insignia items featuring one or more of the SCAD Marks. Below is an example of what a user who clicked on "Men's--T-shirts--Short Sleeve" in the SCAD Apparel Store would see:



30.

Goods for sale that use the SCAD Marks and are listed on Sportswear's "Apparel Store" include, but are not limited to: backpacks, duffel bags, briefcases,

messengers, totes, blankets, hats, scarves, seat cushions, towels.  Sportswear also sells men's *and* women's apparel that use the SCAD Marks such as: t-shirts, sweatshirts, polo shirts, jackets, shorts, and pants.

31.

According to the Terms of Use posted on its website, Sportswear ships orders within all the 50 United States via USPS, UPS and FedEx (*see* http://www.prepsportswear.com/customerservice/termsofuse.aspx).

**Sportswear's Misappropriation of the SCAD Marks**

32.

SCAD has used the SCAD Marks extensively and continuously for many years before Sportswear began marketing, selling, distributing and offering for sale goods and services in connection with confusingly similar imitations of the SCAD Marks.  For example, SCAD has offered and continues to offer, via its online bookstore, various men's and women's apparel, backpacks, bags, and accessories using one or more of the SCAD Marks.  SCAD's bookstore is accessible at: http://www.bkstr.com/scadatlantastore/home/.

33.

Sportswear's use of confusingly similar imitations of the SCAD Marks is likely to deceive, confuse, and mislead prospective purchasers and purchasers into

believing that the goods and services marketed, sold, distributed, and offered for sale by Sportswear are produced by, authorized by, or in some manner associated with or sponsored by SCAD, which they are not. The likelihood of confusion, mistake, and deception engendered by this wholesale and brazen misappropriation of the SCAD Marks has caused irreparable harm to the goodwill symbolized by the SCAD Marks and the reputation for quality and excellence that they embody, and that harm is ongoing.

34.

Purchasers, prospective purchasers and others viewing Sportswear's confusingly similar imitations of the SCAD Marks in connection with Sportswear's goods and services are likely to mistakenly attribute the goods and services to SCAD. These activities are therefore likely to cause confusion before, during, and after the time of purchase or use (or attempted purchase or use) of Sportswear's goods and services. This is particularly damaging with respect to those persons who may perceive a defect or lack of quality in Sportswear's reputation, products, or services. By causing such a likelihood of confusion, mistake, and deception, Sportswear has inflicted irreparable harm to SCAD's goodwill in the SCAD Marks, and the reputation for quality and excellence that they embody, and that harm is ongoing.

35.

Sportswear is using confusingly similar imitations of the SCAD Marks in connection with goods and services that are directly competitive with or related to SCAD's goods and services or within SCAD's natural zone of expansion.

36.

Sportswear's unauthorized use of the SCAD Marks is commercial in nature and is intended to, and will, directly compete with the lawful publication, distribution and advertising commercial activities of SCAD and its licensees to the detriment of SCAD.

37.

On information and belief, Sportswear knowingly, willfully, and intentionally adopted and used confusingly similar imitations of the SCAD Marks to trade on the goodwill symbolized by the SCAD Marks and the reputation for quality and excellence that they embody.

38.

Upon information and belief, Sportswear deliberately employs the SCAD Marks to mislead and confuse consumers that Sportswear's goods and services are provided, sponsored, affiliated with, licensed or approved by SCAD. Sportswear thus unfairly benefits from the goodwill and excellent reputation of the SCAD

Marks established by SCAD throughout the United States and internationally at great effort and expense.

39.

Sportswear has not now, and has never been, authorized by SCAD to use the SCAD Marks or any other colorable imitations of the SCAD Marks in connection with any goods or services, nor has SCAD consented to any such use.

40.

Through Sportswear's use of colorable imitations of the SCAD Marks, SCAD's goodwill has suffered irreparable harm, which harm will continue as long as Sportswear's unauthorized uses continue.

41.

The relatedness, or similarity, between SCAD's officially sponsored products and Sportswear's infringing merchandise point to a high likelihood of confusion. Consumers interested in purchasing SCAD apparel are likely to believe, mistakenly, that Sportswear's merchandise comes from the same source, or is somehow connected with or licensed by SCAD.

42.

Given the nearly identical nature of the goods provided under SCAD's SCAD Marks, the above-described conduct constitutes trading off of the extensive

goodwill SCAD has developed in its famous SCAD Marks.

## **Sportswear's Ongoing Pattern of Willful Infringement**

43.

Sportswear's website for some schools (but not the page for SCAD) contains the statements "Officially Licensed Products" and "Officially Licensed Collegiate Merchandise" which is an admission that Defendant knows it must obtain permission to sell merchandise that contains a school's trademarks.  (*see* http://www.prepsportswear.com/college/us/Georgia/Kennesaw-State-University-Owls.aspx?schoolid=2126357).

44.

Several other entities have accused Sportswear of similar infringing activity and have brought separate actions in an effort to stop Sportswear from infringing their marks.  For example, in separate actions, at least two other educational institutions have brought similar claims against Sportswear.  Copies of both docket reports are attached as Exhibits E and F.

45.

Upon learning of Sportswear's infringing conduct, SCAD, through its counsel, notified Sportswear of the SCAD Marks and requested (among other things) that Sportswear cease and desist from any further production, offers to sell,

14

sale, or distribution of the Infringing Goods that use the SCAD Marks.  A copy of SCAD's May 16, 2014 letter to Sportswear is attached as Exhibit G.

46.

On May 23, 2014, Sportswear replied to SCAD's first letter and refused to comply with SCAD's demands.  A copy of Sportswear's May 23, 2014 reply letter to SCAD is attached as Exhibit H.

47.

On information and belief, Sportswear's reply letter is a form response that it sends to rights holders who complain of its improper actions in the hopes that the complaining party will simply go away.  For example, Sportswear sent an identical letter (except for referenced college) to a rights holder (Muhlenberg College) that later brought suit against Sportswear.  A copy of the form letter to Muhlenberg College is attached as Exhibit I and was previously filed as Exhibit "C" to Muhlenberg's Complaint (*See* Dkt. 1-3, from *Muhlenberg College v. Sportswear, Inc.*, Eastern District of Pennsylvania, 5:13-cv-07197-JLS).

48.

On June 19, 2014, SCAD, through its counsel, responded to Sportswear's form letter and again demanded that Sportswear cease and desist its willful infringement of the SCAD Marks.  A copy of SCAD's June 19, 2014 letter to

Sportswear is attached as Exhibit J.

49.

On July 7, 2014, Sportswear, through its counsel, responded to SCAD's second letter and again refused to comply with SCAD's demands. Instead, Sportswear willfully and deliberately continues to use the SCAD Marks. A copy of Sportswear's July 7, 2014 reply letter to SCAD is attached as Exhibit K.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement of the SCAD Marks**
**under Section 32 of the Lanham Act**

50.

SCAD hereby incorporates and re-alleges the assertions in paragraphs 1 to 49 above as if fully set forth herein.

51.

SCAD owns several valid and enforceable federal trademark registrations for the SCAD Marks (*see* Ex. A – E).

52.

Sportswear's use of the SCAD Marks in connection with its goods and services is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Sportswear's goods and services are produced or distributed by SCAD, or are associated or connected with SCAD, or have the

16

sponsorship, endorsement, or approval of SCAD, and as such constitutes infringement of the SCAD Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

### 53.

Unless enjoined, Sportswear will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to SCAD' goodwill and reputation as embodied in the SCAD Marks, for which SCAD has no adequate remedy at law.

### 54.

Sportswear's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with SCAD's federally registered SCAD Marks to SCAD's great and irreparable injury.

### 55.

Sportswear has caused and is likely to continue causing substantial injury to the public and to SCAD, and SCAD is entitled to injunctive relief and to recover Sportswear's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117

### SECOND CLAIM FOR RELIEF
**Unfair Competition and False Designation of Origin as to the SCAD Marks under Section 43(a) of the Lanham Act**

**(15 U.S.C. § 1125(a)(1)(A))**

56.

SCAD hereby incorporates and re-alleges the assertions in paragraphs 1 to 55 above as if fully set forth herein.

57.

Through extensive use of the SCAD Marks for several years, SCAD has developed extensive goodwill rights in said marks, which goodwill is protected by, *inter alia,* Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.

Sportswear's use of confusingly similar imitations of the SCAD Marks has caused and/or is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Sportswear's goods and services are produced or distributed by SCAD, or are associated or connected with SCAD, or have the sponsorship, endorsement, or approval of SCAD.

59.

Sportswear has made false representations, false descriptions, and false designations of origin of their goods and services in violation of 15 U.S.C. § 1125(a), and Sportswear's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members

of the public and, additionally, injury to SCAD's goodwill and reputation as embodied in the SCAD Marks, for which SCAD has no adequate remedy at law.

60.

Sportswear's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the SCAD Marks to the great and irreparable injury to SCAD.

61.

Sportswear's conduct has caused, and is likely to continue causing, substantial injury to the public and to SCAD, and SCAD is entitled to injunctive relief and to recover Sportswear's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## THIRD CAUSE OF ACTION
### Counterfeiting under Section 32 of the Lanham Act

62.

SCAD hereby incorporates and re-alleges the assertions in paragraphs 1 to 61 above as if fully set forth herein.

63.

Sportswear, without authorization from SCAD, has sold, offered for sale,

distributed and/or advertised apparel and related goods that display counterfeits or colorable imitations of the SCAD Marks.

64.

Sportswear's actions are intended to cause, have caused and are likely to continue to cause confusion, mistake and deception among consumers, the public and SCAD's licensees as to whether Sportswear's infringing merchandise originate from or are affiliated with, sponsored by or endorsed by SCAD.

65.

Sportswear has acted with knowledge of SCAD's ownership of the SCAD Marks and with deliberate, willful intention to trade upon the consumer goodwill created and enjoyed by SCAD for Sportswear's profit.

66.

Sportswear's acts constitute trademark counterfeiting in violation of 15 U.S.C. Section 1114.

67.

Sportswear's conduct has caused, and is likely to continue causing, substantial injury to the public and to SCAD, and SCAD is entitled to injunctive relief and to recover Sportswear's profits, actual damages, statutory damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15

U.S.C. §§ 1114, 1116 and 1117.

## FOURTH CAUSE OF ACTION
**Common Law Unfair Competition and Trademark Infringement
under O.C.G.A. § 10-1-372**

68.

SCAD hereby incorporates and re-alleges the assertions in paragraphs 1 to 67 above as if fully set forth herein.

69.

For many years, SCAD has made exclusive use of the SCAD Marks on a wide variety of goods and services.

70.

Sportswear's use of confusingly similar imitations of the SCAD Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Sportswear's goods and services are manufactured or distributed by SCAD, or are associated or connected with SCAD, or have the sponsorship, endorsement, or approval of SCAD. The SCAD Marks are unique, distinctive, and have acquired secondary meaning.

71.

Sportswear, by virtue of its acts as alleged above, has willfully, knowingly, maliciously and intentionally engaged in acts of unfair competition in violation of

O.C.G.A. § 10-1-372.

### 72.

Sportswear's conduct has caused, and if not enjoined, will continue to cause irreparable damage to SCAD in a manner that cannot be calculated or compensated in money damages. SCAD has no adequate remedy at law.

### 73.

Pursuant to O.C.G.A. § 10-1-373, SCAD is entitled to preliminary and permanent injunctive relief as well as attorneys' fees and costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Savannah College of Art and Design, Inc. demands a jury trial on all claims so triable and prays for judgment as follows:

(a)     The Court enter judgment that Defendant has engaged in trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, has engaged in false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), has engaged in counterfeiting in violation of 15 U.S.C. § 1114, and has engaged in deceptive trade practices in violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372;

(b)     On Plaintiff's First, Second, and Third Claims for Relief, damages,

disgorgement of Defendant's profits, enhanced damages (including treble damages for willfulness and statutory damages for counterfeiting), attorneys' fees, costs, prejudgment interest, preliminary and permanent injunctive relief prohibiting Defendant from further violations of the Lanham Act, and a destruction order requiring that Defendant deliver up and destroy all goods, merchandise, products, labels, signs, prints, packaging, wrappers, containers, advertising materials, Internet images, and other materials that constitute or reproduce the SCAD Marks or any other marks confusingly similar to the SCAD Marks;

(c)     On Plaintiff's Fourth Claim for Relief, preliminary and permanent injunctive relief prohibiting further violations of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372, attorneys' fees and costs;

(d)     An award of Plaintiff's costs associated with this action;

(e)     An award of prejudgment interest; and

(f)     On each of Plaintiff's claims for relief, such further and other relief as the Court deems just and proper.

## **Demand for Jury Trial**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 18th day of July, 2014.

*s/ W. Scott Creasman*
W. Scott Creasman
screasman@taylorenglish.com
Georgia Bar No. 194860
Seth K. Trimble
strimble@taylorenglish.com
Georgia Bar No. 851055

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle – Suite 400
Atlanta, Georgia 30339
Telephone:   (770) 434-6868
Facsimile:    (404) 434-7376

Attorneys for Plaintiff
Savannah College of Art and Design, Inc.