IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SAVANNAH COLLEGE OF ART
AND DESIGN, INC.,

    Plaintiff,

       v.

SPORTSWEAR, INC.
d/b/a PrepSportswear,

    Defendant.

CIVIL ACTION FILE
NO. 1:14-CV-2288-TWT

## OPINION AND ORDER

This is a trademark infringement case. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 39], the Plaintiff's Motion for Summary Judgment [Doc. 40], and the Defendant's Motion to Strike Improper Evidence [Doc. 50]. For the reasons stated below, the Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part and the Plaintiff's Motion for Summary Judgment is GRANTED. The Defendant's Motion to Strike Improper Evidence is GRANTED.

## I. Background

The Plaintiff, Savannah College of Art and Design, Inc., was founded in 1978 as a private, non-profit college.[1] The Plaintiff now has campuses in

---

[1] Def.'s Statement of Material Facts ¶ 1 [Doc. 039-2].

Savannah, Atlanta, Hong Kong, and Lacoste, France.[2] The Plaintiff's business is providing educational services.[3] The Plaintiff owns several service marks registered in connection with the provision of educational services: Registration No. 3,751,493 for a circular bee design,[4] Registration No. 3,118,809 for a circular shield design,[5] Registration No. 2,686,644 for the text mark "SCAD,"[6] and Registration No. 2,918,888 for the text mark "Savannah College of Art and Design."[7] The Defendant, Prep Sportswear, is an internet-based business incorporated under Washington law in 2005.[8] The Defendant sells customizable apparel and fan clothing for a variety of organizations, including high school and college sports teams.[9] In August of 2009, the Defendant began selling goods bearing the words "Savannah College of Art and Design" and "SCAD."[10] On July 18, 2014, the Plaintiff brought suit for trademark infringement under

---

[2] *Id.*

[3] *Id.* ¶ 2.

[4] *Id.* ¶ 4.

[5] *Id.* ¶ 8.

[6] *Id.* ¶ 14.

[7] *Id.* ¶ 17.

[8] *Id.* ¶ 44.

[9] *Id.* ¶ 45.

[10] *Id.* ¶¶ 53-54.

Section 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125; and unfair competition and trademark infringement under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372.

The parties filed cross-motions for summary judgment on April 17, 2015. The Court entered judgment in favor of the Defendant. The Court found dispositive the following facts: (1) all of the marks were registered in connection with the provision of educational services;[11] (2) none of the marks were registered for use in connection with the sale of apparel;[12] and (3) the Plaintiff produced no evidence that it or its licensees had used the marks in connection with the sale of apparel prior to 2011.[13] Section 1114 protects against infringement only if the marks at issue are federally registered. The Court reasoned that the Plaintiff could not sustain its § 1114 claims because it could not show that it had federally registered its marks for use in connection with the sale of apparel. Section 1125 extends broader protections to the holders of both registered and unregistered, or "common-law," marks. In order to sustain its § 1125 claim, however, the Plaintiff would need to demonstrate that it had

---

[11] *Id.* ¶¶ 5, 9, 15,18.

[12] *Id.* ¶¶ 6, 10, 16, 19.

[13] In 2011, the Plaintiff entered into a licensing agreement with Follett Higher Education Group, Inc. to sell branded apparel in its campus bookstores. *Id.* ¶¶ 24, 27-30.

appropriated common-law trademark rights through prior use of its marks in commerce. There is no evidence in the record that the Plaintiff used its marks in commerce prior to the Defendant's first use of the marks on apparel in 2009. Therefore, the Court concluded that the Plaintiff's federal claims, and by extension its state law claim, failed as a matter of law. The Court did not reach the question of whether the Defendant's use of the contested marks created a likelihood of confusion.

The Plaintiff appealed to the Eleventh Circuit. The Eleventh Circuit reversed and remanded on the grounds that this Court's decision could not be reconciled with the controlling authority of *Boston Professional Hockey Ass'n, Inc., v. Dallas Cap & Emblem Mfg., Inc.*[14] In *Boston Hockey*, the National Hockey League and several individual hockey teams sought to enjoin the defendant manufacturer from selling replica patches bearing the teams' symbols. The hockey teams had federally registered their team symbols "as service marks for ice hockey entertainment services," but had not registered their marks in connection with the sale of goods. The *Boston Hockey* panel nevertheless held that the plaintiffs were entitled to a permanent injunction barring the defendant from manufacturing and selling the replica patches. The Eleventh Circuit explained the doctrinal implications as follows:

> *Boston Hockey*, though in our view lacking critical analysis, implicitly but necessarily supports the proposition that the holder of a federally-

---

[14] 510 F.2d 1004 (5th Cir. 1975).

registered service mark need not register that mark for goods–or provide evidence of prior use of that mark on goods–in order to establish the unrestricted validity and scope of the service mark, or to protect against another's allegedly infringing use of that mark on goods.[15]

In light of *Boston Hockey*, the Eleventh Circuit held that the validity and scope of the Plaintiff's federally registered service marks extend to the Defendant's use of the allegedly infringing marks on apparel. The Eleventh Circuit remanded to this Court with instructions to "assess the strength of [the Plaintiff's] word marks" and to "consider whether SCAD has demonstrated that Sportswear's use of its word marks is likely to create consumer confusion as to origin, source, approval, affiliation, association, or sponsorship."[16] On remand, the parties agree that the record is complete and that the matter is ripe for summary adjudication.[17] The Court will therefore address the parties' remaining arguments on summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material

---

[15] *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1264 (11th Cir. 2017), *cert. denied*, 139 S. Ct. 57, 202 L. Ed. 2d 20 (2018).

[16] *Id.*, 872 F.3d at 1264.

[17] Pl.'s Letter Br. in Supp. of Summ. J., at 5 [Doc. 83]; Def.'s Resp. to Pl.'s Letter Br. in Supp. of Summ. J., at 1 [Doc. 85].

fact exists and that the movant is entitled to judgment as a matter of law.[18]
The court should view the evidence and any inferences that may be drawn in
the light most favorable to the nonmovant.[19]  The party seeking summary judg-
ment must first identify grounds that show the absence of a genuine issue of
material fact.[20]  The burden then shifts to the nonmovant, who must go beyond
the pleadings and present affirmative evidence to show that a genuine issue of
material fact exists.[21]

### III. Discussion

The Plaintiff argues that summary judgment should be granted for all
of its infringement claims on likelihood of confusion grounds.[22]  "Although like-
lihood of confusion is a question of fact, it may be decided as a matter of law."[23]
The Defendant's primary argument for summary judgment has been foreclosed

---

[18] Fed. R. Civ. P. 56(c).

[19] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[20] *Celotex Corp. V. Catrett*, 477 U.S. 317, 323-24 (1986).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[22] The Plaintiff's § 1114 and § 1125 claims both turn on whether the
Defendant's use of similar or identical marks is likely to cause confusion as to
the origin of the products. *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d
1502, 1503-04 (11th Cir. 1985). Courts analyzing infringement claims arising
under Georgia law apply the same likelihood of confusion test. *Kason Indus. v.
Component Hardware Group*, 120 F.3d 1199, 1203 (11th Cir. 1997). Accord-
ingly, there is no need for the Court to distinguish between the Plaintiff's
claims in addressing its arguments on summary judgment.

[23] *Tana v. Dantanna's*, 611 F.3d 767, 775 n.7 (11th Cir. 2010).

by the Eleventh Circuit on appeal. In the alternative, the Defendant argues for summary judgment based on the affirmative defenses of abandonment and functionality. The Defendant further argues that there is no evidence in the record that it has actually used the Plaintiff's shield design mark on apparel goods. Finally, the Defendant renews its motion to exclude evidence pertaining to the Plaintiff's advertising of its marks from the summary judgment record.

"In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion."[24] The Defendant's affirmative defenses are challenges to the validity of the Plaintiff's marks that, in the Court's view, are best resolved before proceeding to the likelihood of confusion prong. Therefore, the Court will begin with the Defendant's affirmative defenses. The Court will also resolve the Defendant's evidentiary motions because the evidence that the Defendant seeks to exclude is relevant to the likelihood of confusion analysis.

### A. Abandonment

The Defendant argues that the Plaintiff's marks have been abandoned through naked licensing. "A license is naked, resulting in trademark abandonment, when there is insufficient control retained by the trademark owner to

---

[24] *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). The Plaintiff's federal claims for infringement and unfair competition and its parallel state law claims all turn on the likelihood of confusion test. *See Amstar Corp. v. Domino's Pizza*, Inc., 615 F.2d 252, 258-59 (5th Cir. 1980); *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 935, 935 n.16 (11th Cir. 2010).

ensure the quality of production and prevent public confusion."[25] An abandoned trademark "falls into the public domain and is free for all to use[.]"[26] The party alleging abandonment must meet a stringent burden, because "only minimal control is required to make the trademark license valid."[27]

In June of 2011, the Plaintiff entered into a "Bookstore Management Agreement" with Follett Higher Education Group, Inc. that, among other things, licensed Follett to sell merchandise bearing the Plaintiff's marks online and in the Plaintiff's brick and mortar bookstores.[28] The parties contest the extent of the Plaintiff's control over the quality of the goods sold by Follett. The Defendant relies on excerpts from depositions with the Plaintiff's employees that purportedly show that the Plaintiff's employees do not select, approve, or inspect the quality of the clothing manufactured and sold by Follett.[29] In

---

[25] *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1315 (N.D. Ga. 2003) (citing *Barcamerica Intern. USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002)), *aff'd sub nom. Go Med. Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264 (Fed. Cir. 2006).

[26] *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002) (quoting 3 McCarthy on Trademarks and Unfair Competition § 17:1 (4th ed.)).

[27] *Go Med. Indus. Pty, Ltd*, 300 F. Supp. 2d at 1315 (citing *U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 140 (3rd Cir.1981); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977)).

[28] Ex. 6 to Axel Decl., at 3 [Doc. 39-10].

[29] Def.'s Statement of Material Facts ¶¶ 37-43.

8

response, the Plaintiff points to language from the licensing agreement indicating that the Plaintiff may "in its sole discretion" direct Follett to discontinue sale of any goods deemed to be of insufficient quality.[30] The Plaintiff also points to evidence tending to show that its employees are involved in some capacity in the design and quality control process.[31] It is clear from the record that the Plaintiff exercises at least some control over the Follett's products bearing its marks.

In addition to its naked licensing argument, the Defendant makes the related but analytically distinct argument that the Plaintiff has "expressly abandoned" the bee design mark when it issued internal instructions in 2011 to cease use of the mark on apparel.[32] The Defendant's abandonment argument with respect to the bee design mark is without merit. It appears from the record that the Plaintiff has continuously used the bee design mark in connection with the educational services for which it is registered. There is no direct or circumstantial evidence in the record to support a finding that the Plaintiff intended to abandon its service mark. As the Eleventh Circuit explained on appeal, whether the Plaintiff does or does not use its marks on goods has no

---

[30]  Pl.'s Resp. to Def.'s Mot. for Summ. J., at 11 [Doc. 46] (citing Ex. 6 to Axel Decl.).

[31]  *Id.*, at 11-15.

[32]  Def.'s Br. in Supp. of Mot. for Summ. J., at 24 [Doc. 39-1].

bearing on the marks' validity in this infringement action. Therefore, the Defendant's motion for summary judgment on the defense of abandonment should be denied.

### B. Functionality

The Defendant argues that its use of the Plaintiff's marks is functional and therefore cannot constitute trademark infringement. "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature."[33] A product feature that is deemed functional is not protected by trademark law even if its use might give rise to confusion as to the source of the product. The Eleventh Circuit has recognized two tests for determining functionality. The "traditional test" asks whether a product feature "is essential to the use or purpose of the article or if it affects the cost or quality of the article."[34] The "competitive

---

[33] *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995)); *see also* 1 McCarthy on Trademarks and Unfair Competition § 7:63 (5th ed.)("The requirement of nonfunctionality in trademark and trade dress law is concerned with whether the particular shape or feature claimed to be a trademark or trade dress contributes to a utilitarian purpose. If it makes the product more useful for its purpose or contributes to economy of manufacture or use, then the feature is 'functional' and is not capable of trademark protection.").

[34] *Dippin' Dots, Inc.*, 369 F.3d at 1203 (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001)).

T:\ORDERS\14\Savannah College of Art and Design, Inc\msj2twt.docx

necessity test," which applies in cases of aesthetic functionality, asks whether "a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'"[35]

Although not specifically couched as such, it is clear that the Defendant is proceeding on a theory of what one commentator describes as "defensive" aesthetic functionality.[36] The Defendant argues that, unlike the Plaintiff, it uses the Plaintiff's marks not as indicators of the product's source but rather as aesthetic features that serve to increase the desirability of the apparel for consumers who want to signal their affiliation with the Plaintiff. This use of the Plaintiff's marks, the Defendant argues, is functional and therefore not actionable under trademark law. The Defendant cites in support the post-split Fifth Circuit case *Supreme Assembly, Order of Rainbow for Girls v. J. H. Ray Jewelry Co.*[37] In *Supreme Assembly*, the Fifth Circuit affirmed a lower court decision holding that the defendant jewelry maker's use of the plaintiff fraternal organization's collective mark on jewelry served the functional purpose of

---

[35] *Id.* (quoting *TrafFix Devices, Inc.*, 532 U.S. at 32).

[36] *See* 1 McCarthy on Trademarks and Unfair Competition § 7:82 (5th ed.) ("A handful of cases take the position that the unauthorized use of what is unquestionably someone else's valid and nonfunctional trademark is not an infringement because the *defendant* is making an aesthetically functional use of the mark. These cases take the aesthetic functionality theory of a challenge to the validity of a mark and turn it on its head into a defense to a valid mark.").

[37] 676 F.2d 1079 (5th Cir. 1982).

showing affiliation with the organization.[38] The Defendant also cites the Ninth Circuit case *International Order of Job's Daughters v. Lindeburg & Co.*[39] In *Job's Daughters*, the Ninth Circuit held that the use of a fraternal organization's marks on jewelry was functional because consumers purchase such products to express allegiance to the organization and it "would be naïve to conclude that the name or emblem is desired because consumers believe that the product somehow originated with or was sponsored by the organization the name or emblem signifies."[40]

The Defendant's reliance on these cases is misplaced. In *Supreme Assembly*, the Fifth Circuit did not reach the question of whether the lower court's findings on functionality were correct, instead affirming based on the district court's finding of no likelihood of confusion.[41] As for *Job's Daughters*, the broad interpretation of aesthetic functionality espoused in that case has since been substantially narrowed by the Ninth Circuit,[42] and its underlying assumptions regarding consumer behavior have been rejected by the Eleventh

---

[38] *Id.*, at 1083 n.5.

[39] 633 F.2d 912 (9th Cir. 1980).

[40] *Id.*, at 918.

[41] 676 F.2d at 1083 n.5.

[42] *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1070 (9th Cir. 2006).

Circuit.[43] Neither case involved application of the modern test for "compara-
tive necessity" employed by the Eleventh Circuit. The Defendant does not even
cite the Eleventh Circuit test, much less explain how being denied the use of
the Plaintiff's marks would put it at a "non-reputation-related disadvantage."
Indeed, the inability to use the trade name of another on one's own product
would appear to be precisely the kind of "reputation-related disadvantage"
sanctioned by trademark law. The mere fact that the use of the Plaintiff's mark
adds value to the Defendant's product does not support a finding that the use
is functional. The Defendant's motion for summary judgment on the defense of
functionality should be denied.

### C. Non-Use of Shield Design Mark

The Defendant argues that there is no evidence that it has used any
portion of the Plaintiff's shield design mark on apparel.[44] The Plaintiff con-
cedes that the Defendant "has apparently not offered for sale or sold any goods
with that exact shield design."[45] The Plaintiff instead contends that the De-
fendant has sold goods bearing the words "Savannah College of Art and

---

[43] *Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1547 (11th
Cir. 1985).

[44] Def.'s Br. in Supp. of Mot. for Summ. J., at 22-23.

[45] Pl.'s Resp. to Def.'s Br. in Supp. of Mot. for Summ. J., at 15.

Design," which appear in a circular border of the design mark.[46] But the infringement alleged is already covered by the Plaintiff's word mark for this exact phrase. The Plaintiff cannot show that the Defendant has ever used the shield image or used the phrase "Savannah College of Art and Design" arranged as it appears on the shield design mark. Therefore, the Defendant's motion for summary judgment as to the Plaintiff's claims for infringement of the shield design mark is granted.

### D. Renewed Motion to Exclude

The Defendant asks the Court to revisit its decision granting in part and denying as moot in part the Defendant's motion to exclude evidence from the record on summary judgment. After the parties' final round of summary judgment briefing, the Defendant moved to exclude three pieces of evidence attached to the Plaintiff's reply brief: (1) a website purporting to show prior use of the Plaintiff's marks on apparel; (2) a paragraph from the declaration of Hannah Flower, the Plaintiff's Associate Vice President for Academic Support and Legal Affairs and a deponent in this case, detailing expenditures related to the marketing of the Plaintiff's services and programs; and (3) a different paragraph from the same declaration detailing the avenues through which the Plaintiff markets its services. The Court granted the Defendant's motion to exclude the website. The Court denied the remainder of the motion to exclude

---

[46] *Id.*

as moot because, in the Court's view, evidence of the Plaintiff's advertising expenditures and methods was not relevant to the question of whether the Plaintiff possessed enforceable rights in a mark related to the sale of apparel goods.

The Court's ruling on the admissibility of the website was not disturbed by the Eleventh Circuit on appeal and the Court sees no reason to revisit it. The Court must, however, revisit its ruling regarding the evidence contained in the declaration attached to the Plaintiff's reply brief. Evidence of the Plaintiff's general advertising expenditures and methods is potentially relevant to the question of likelihood of confusion, which the Court did not reach in its prior summary judgment Order. The Court concludes that the declaration must also be excluded. The declaration, in effect, provides new testimony from one of the Plaintiff's deponents after the close of discovery and after the Defendant's response brief had already been filed. The Court finds no support for this procedural maneuver in the federal rules or case law. Accordingly, the renewed motion to exclude is granted in full and the Court will not consider the declaration on summary judgment.

### E. Likelihood of Confusion

"In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion."[47]  The Court must now proceed to the second prong

---

[47] *Dieter*, 880 F.2d at 326.

of the test for trademark infringement: whether the Defendant's use of the Plaintiff's marks is likely to cause confusion.[48] The Plaintiff argues that the likelihood of confusion factors weigh so heavily in its favor that this Court should find infringement as a matter of law.

In determining whether there is sufficient evidence in the record to support a finding of likelihood of confusion, the Court must assess the following seven factors: (1) the strength or distinctiveness of the allegedly infringed mark; (2) the similarity between the infringed and infringing marks; (3) the similarity of the goods or services offered under the infringed and infringing marks; (4) the similarity of actual sales methods; (5) the similarity of advertising methods; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence of actual confusion in the consuming

---

[48] While the Eleventh Circuit applied *Boston Hockey* to the question of whether the Plaintiff's marks were valid and enforceable, the Eleventh Circuit specifically disclaimed what one commentator described as the "heresies" of *Boston Hockey* with regards to likelihood of confusion. *Savannah Coll. of Art & Design, Inc.*, 872 F.3d at 1264 (citing 4 McCarthy on Trademarks § 24:10). *Boston Hockey* appears to suggest that infringement lies when customers "recognize[] the product as bearing a mark of the plaintiff[s]," regardless of whether the customers are thereby confused as to the affiliation or sponsorship of the product. 4 McCarthy on Trademarks § 24:10. As the Eleventh Circuit explained, that is not the law. The Plaintiff must show likelihood of confusion in order to prevail. Therefore, the Court proceeds with the understanding that *Boston Hockey* is of little relevance to the task at hand.

T:\ORDERS\14\Savannah College of Art and Design, Inc\msj2twt.docx

public.[49] The Court must consider each of the seven factors,[50] but the factors need not be accorded equal weight depending on the facts of the case.[51] Typically, the most important factors are the strength of the mark and the existence of actual confusion.[52]

Before proceeding, however, the Court will address the Defendant's argument that the Plaintiff's services and the Defendant's goods are unrelated, such that confusion is "highly unlikely."[53] According to the Defendant, the parties, this Court, and the Eleventh Circuit all agree that the Plaintiff's educational services are not "related" to the Defendant's apparel goods.[54] The Defendant mischaracterizes the Plaintiff's position and the prior rulings in this case. The Plaintiff has stipulated that it has no evidence that it used its marks "in connection with the sale of apparel or related *goods*" prior to the Defendant's first use.[55] The Plaintiff has not stipulated, nor has any court ruled, that

---

[49] *See Tana*, 611 F.3d at 775; *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1360 (11th Cir. 2007).

[50] *Welding Servs., Inc.*, 509 F.3d at 1361.

[51] *Laite*, 756 F.2d at 1542.

[52] *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016).

[53] Def.'s Resp. to Pl.'s Letter Br. in Supp. of Summ. J., at 1.

[54] Def.'s Letter Br. in Supp. of Summ. J., at 2 [Doc. 82].

[55] Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 24 [Doc. 46-1] (emphasis added).

the Plaintiff's *educational services* are unrelated to the Defendant's apparel goods. The relatedness of the Plaintiff's services and the Defendant's goods remains a live question, and indeed the central question, in this case. Goods or services can be related even if they are not in competition with one another.[56] In the context of trademark law, goods or services are "related" when consumers mistakenly believe that they originate from, or are somehow affiliated with, a single source.[57] This determination is made after conducting the likelihood of confusion analysis, not before.[58] To presume that the goods and services at

---

[56] *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994) ("[C]onfusion, or the likelihood of confusion, not competition, is the real test of trademark infringement.") (quoting *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 257-58 (2d Cir. 1987)); *Cont'l Motors Corp. v. Cont'l Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967) ("Often and recently we have made plain that direct competition between the products is not a prerequisite to protective relief.").

[57] *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) ("Moreover, the rights of the owner of a registered trademark are not limited to protection with respect to the specific goods stated on the certificate... but extend to any goods related in the minds of consumers in the sense that a single producer is likely to put out both goods."); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000) ("Thus, even if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods. It is this sense of relatedness that matters in the likelihood of confusion analysis.").

[58] *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1027 (11th Cir. 1989) ("'Related use' is merely a facet of the likelihood of confusion test and therefore requires an inquiry into seven factors affecting the likelihood of confusion among consumers[.]"); 4 McCarthy on Trademarks and Unfair Competition § 24:24 (Relatedness "is a conclusion to be made after a full analysis of the facts shows that there is a likelihood of confusion as to source, affiliation, sponsorship or connection because of the similarity of the marks and

issue are unrelated prior to engaging in likelihood of confusion analysis is to beg the question.

Although not clearly articulated in the Defendant's briefing, the Defendant's focus on the "unrelatedness" of the parties' products could be construed as an objection to traditional likelihood of confusion analysis in a case that, as the Defendant puts it, "cross[es] the goods/services line." The Lanham Act distinguishes trademarks, which are registered in connection with goods, from service marks, which are registered in connection with services.[59] But, "while the distinction between a trademark and a service mark may be relevant for registration purposes, it is not particularly relevant for the purposes of the likelihood of confusion analysis."[60] In conducting its likelihood of confusion analysis, the Court asks whether the Defendant's use of the allegedly infringing marks on its products causes consumer confusion as to origin, source, approval, affiliation, association, or sponsorship.[61] The analysis remains the same regardless of whether the plaintiff seeks to enforce its rights in a trademark or a service mark.[62] Examples abound of courts holding that a likelihood

---

other facts in the case.").

[59] 15 U.S.C. § 1127.

[60] *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1334 n.1 (11th Cir. 1999).

[61] *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491-92 (11th Cir. 1983).

[62] *Frehling Enterprises, Inc.*, 192 F.3d at 1334 n.1; *see also Bos. Athletic*

19

of confusion exists across the goods/services divide.[63]   The seven-factor test for

likelihood of confusion equips the Court to appropriately weigh the distinctions

between goods and services to the extent that they are relevant in a particular

case. It is to this test that the Court now turns.

### 1. Strength of the Mark

The Eleventh Circuit has established four categories of distinctiveness

for trade and service marks. The more distinctive the mark, the more protec-

tion it receives under trademark law. In order of least to most distinctive, the

---

*Ass'n v. Sullivan*, 867 F.2d 22, 24 n.1 (1st Cir. 1989) ("A trademark is used to
distinguish one's goods from those made by others, while a service mark is used
to distinguish one's services from those offered by others. In either case the
marks are used to indicate the distinctive source of the goods or services, even
if that source is unknown.").

[63]   *See In Re Comexa Ltda.*, 60 U.S.P.Q.2d 1118 (T.T.A.B. 2001) (affirm-
ing Examining Attorney's refusal to register a trademark for chili and pepper
sauce on the grounds that it was confusingly similar to a service mark regis-
tered in connection with restaurant services); *Beef/Eater Restaurants, Inc. v.
James Burrough Ltd.*, 398 F.2d 637, 639 (5th Cir. 1968) (holding that the de-
fendant's use of the word "Beefeater" in connection with its restaurant services
infringed on the plaintiff's "Beefeater" trade name registered in connection
with the sale of gin); *Bos. Athletic Ass'n v. Sullivan*, 867 F.2d 22, 34-35 (1st
Cir. 1989) (holding that the defendant's use of logos referring to the Boston
marathon to sell shirts infringed on the plaintiff's service marks used in con-
nection with marathon-related services); *John Walker & Sons, Ltd. v. Bethea*,
305 F. Supp. 1302, 1304 (D.S.C. 1969) (holding that the defendant's use of the
words "Johnny Walker" in connection with motel services infringed on the
plaintiff's trademark for the words "JOHNNIE WALKER" in connection with
the sale of liquor); *see also Murphy v. Provident Mut. Life Ins. Co. of Philadel-
phia*, 923 F.2d 923, 927 (2d Cir. 1990) (holding that it was irrelevant whether
the plaintiff was claiming ownership of a trademark or a service mark because
"[w]hether a mark is one or the other, the standards for determining infringe-
ment are essentially the same").

categories are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary.[64] Generic marks "refer to a class of which an individual service is a member[.]"[65] They are not entitled to protection. Descriptive marks "describe a characteristic or quality of an article or service[.]"[66] They warrant protection only if the mark owner can prove that the mark has acquired secondary meaning.[67] A descriptive name can acquire secondary meaning by "becoming associated with the proprietor's product or service. A name has acquired secondary meaning when 'the primary significance of the term in the minds of the consuming public is not the product but the producer.'"[68] Suggestive marks evoke certain characteristics of the goods or services and "require an effort of the imagination" by the consumer in order to be understood as descriptive, whereas arbitrary or fanciful marks bear no direct relationship to the goods or services bearing the mark.[69] Suggestive marks and arbitrary or fanciful marks are presumed strong without any showing of secondary meaning.[70]

---

[64] *Welding Servs., Inc.*, 509 F.3d at 1357-58; *see also Frehling Enterprises, Inc.*, 192 F.3d at 1335.

[65] *Frehling Enterprises, Inc.*, 192 F.3d at 1335.

[66] *Id.*

[67] *Welding Servs., Inc.*, 509 F.3d at 1358.

[68] *Welding Servs., Inc.*, 509 F.3d at 1358 (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 118 (5th Cir.1979)).

[69] *Id.*

[70] *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1311

21

The Plaintiff does not dispute that its text marks are descriptive, but primarily relies on the presumption of strength accorded to descriptive marks that have achieved incontestable status. In *Dieter v. B & H Industries of Southwest Florida, Inc.*, the Eleventh Circuit held that a mark's "incontestable status is a factor to be taken into consideration in likelihood of confusion analysis."[71] An incontestable mark "is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark."[72] But, while incontestability creates a presumption of strength, that presumption is not conclusive.[73] Therefore, the Court will begin with the presumption that the Plaintiff's marks are strong, but will consider whether other factors identified by the Defendant undermine or negate the presumption.[74]

The Defendant insists that, while the Plaintiff's marks may be strong as

---

(D. Ga. 2008) (citing *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*, 651 F.2d 311, 315 (5th Cir. 1981)).

[71] *Dieter*, 880 F.2d at 329.

[72] *Id.*

[73] *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1329 (M.D. Fla. 2003) ("Incontestable status—somewhat of a misnomer—does not mean that a mark's strength cannot be attacked[.] When determining the mark's strength for the likelihood of confusion analysis, incontestability is 'simply one piece of the overall determination of a mark's strength.'") (quoting *First Keystone Federal Sav. Bank v. First Keystone Mortg., Inc.*, 896 F.Supp. 456, 461 (E.D. Pa.1995)), *aff'd sub nom. HBP, Inc. v. Am. Marine Holdings*, 129 F. App'x 601 (11th Cir. 2005).

[74] *See Trilink Saw Chain, LLC*, 583 F. Supp. 2d at 1312.

applied to educational services, they are weak as applied to apparel. If by this the Defendant means that the marks' strength cannot extend beyond the goods or services for which they are registered, then the Defendant is eliding the distinction between the validity prong and the likelihood of confusion prong of the test for infringement. The statutory language and case law cited by the Defendant stand for the proposition that, when a mark's *validity* is challenged, its incontestable status is conclusive evidence only of its validity in relation to the goods and services listed on the registration.[75] But, "although the *validity* of a registered mark extends only to the listed goods or services, an owner's *remedies* against confusion with its valid mark are not so circumscribed."[76] As the Eleventh Circuit has long recognized, "the rights of the owner of a registered trademark are not limited to protection with respect to the specific goods stated on the certificate . . . but extend to any goods related in the minds of consumers in the sense that a single producer is likely to put out both goods."[77] The stronger the mark, the greater the scope of protection it receives.[78]

---

[75] *Cf. Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 153 (S.D.N.Y. 2011) (interpreting 15 U.S.C. § 1115), *aff'd*, 508 F. App'x 31 (2d Cir. 2013).

[76] *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 971 (9th Cir. 2007).

[77] *E. Remy Martin & Co., S.A.*, 756 F.2d at 1530.

[78] *Welding Servs., Inc.*, 509 F.3d at 1361.

That is not to say that a mark's strength transfers undiminished into every market in which the mark owner seeks to enforce it. Evidence of third party use of the marks in connection with different goods or services "limit[s] the protection to be accorded plaintiff's mark outside the uses to which plaintiff has already put its mark."[79] In *Amstar*, the pre-split Fifth Circuit recognized that the plaintiff's "Domino" mark was strong when it appeared on packaging for sugar. But evidence of extensive third party use of the term to, for example, sell cigarettes and donut mix made it less likely that the consuming public would associate the word "Domino" with the plaintiff when they encountered it on other products. In this case, the Defendant has presented evidence that four other online apparel retailers use the Plaintiff's marks on apparel goods without a license. The proffered evidence of third party use falls short of constituting the kind of "extensive third-party use" that typically justifies limiting the protection extended to an otherwise strong mark, and does little to diminish the presumptive strength of the Plaintiff's marks.[80] The Court concludes

---

[79] 615 F.2d at 260.

[80] The extent of use of a mark, which measures the duration of the mark's use and the amount of advertising conducted under the mark, is another factor that the Court may consider in determining the mark's strength. *See Trilink Saw Chain, LLC*, 583 F. Supp. 2d at 1313. Although the Plaintiff repeatedly emphasizes its worldwide renown in the educational sphere, the substantive evidence regarding the extent of use of its marks has not been well-presented to the Court on summary judgment. The Plaintiff has attempted to introduce evidence of its advertising efforts that, in the Court's view, is not properly before the Court. The Court emphasizes, however, that even if this evidence were properly before the Court, it would not alter the Court's ultimate

that this factor weighs strongly in the Plaintiff's favor.

## 2. Similarity between the infringed and infringing marks

"In evaluating the similarity of marks, [the court] must consider the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed."[81] Evidence in the record indicates that the Defendant has branded its apparel goods with words that are identical to the Plaintiff's text marks "Savannah College of Art and Design" and "SCAD."[82] While the Plaintiff concedes that the Defendant has not used the bee design logo in its entirety, it has submitted uncontroverted evidence that the Defendant has used the bee portion of the logo in conjunction with the Plaintiff's text marks.[83] This factor weighs in the Plaintiff's favor.[84]

---

conclusion on the likelihood of confusion question.

[81]  *E. Remy Martin & Co., S.A.*, 756 F.2d at 1531.

[82]  Def.'s Statement of Material Facts ¶¶ 53-54.

[83]  *See* Pl.'s Statement of Material Facts ¶ 27 [Doc. 40-2]; Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 27 [Doc. 47-3].

[84]  Confusingly, the Defendant argues that the marks are not similar because the Defendant did not use the Plaintiff's marks as trademarks. Def.'s Resp. to Pl.'s Mot. for Summ. J., at 11-12. The Court has already discussed this argument in the context of the Defendant's functionality defense, *supra*. How the Defendant intended to use the marks is not relevant to the question of whether the marks would appear similar to the consuming public.

### 3. Similarity of the goods or services

The parties agree that the Plaintiff's educational services and the Defendant's apparel goods are not the same.[85] The Defendant views this fact as dispositive because, according to the Defendant, it demonstrates that the "goods and services are neither competitive nor related."[86] As the Court has already explained and as the precedent cited by the Defendant holds, relatedness is determined only after consideration of all of the likelihood of confusion factors.[87] Goods and services can be related even if they are not similar in kind. Moreover, it is not necessary to establish that the goods or services are competitive in order to prevail in an infringement action. The Court will not engage in protracted analysis of this factor. While it does not weigh in the Plaintiff's favor, the Court views the other factors to be of greater significance.

### 4. Similarity of actual sales methods

"The fourth factor takes into consideration where, how, and to whom the

---

[85] Pl.'s Br. in Supp. of Mot. for Summ. J., at 19 [Doc. 40-1].

[86] Def.'s Resp. to Pl.'s Mot. for Summ. J., at 13 [Doc. 47].

[87] The Defendant cites *Tally-Ho* for the proposition that "[r]elated goods are those that a consumer is likely to believe come from the same source and are somehow connected with a common company." 889 F.2d at 1027. But the very next sentence of the opinion establishes that "'[r]elated use' is merely a facet of the likelihood of confusion test and therefore requires an inquiry into seven factors affecting the likelihood of confusion among consumers[.]" *Id.*

parties' products are sold."[88]  Put differently, this factor asks whether the parties' customer bases overlap.[89]  The Plaintiff asserts that the parties' "customers and methods of reaching them entirely overlap—people interested in apparel bearing [the Plaintiff's] marks."[90]  The Defendant does not appear to contest this claim, instead focusing on two arguments regarding its sales methods that it views as "fatal" to the Plaintiff's claim.

First, the Defendant notes that customers visiting its site choose the color, text, and physical article of clothing that are ultimately combined into the product shipped to the customer. The Defendant argues that customers cannot be confused because "[t]here is simply no way a customer would believe a shirt's 'origin' somehow changes" when the customer cycles through different color and text options.[91]  The Defendant's argument appears to be premised on the mistaken belief that the only confusion actionable under trademark law is confusion as to the physical origin of the goods or services at issue. That is not the case—consumers can instead be confused as to whether the Plaintiff endorsed, sponsored, licensed, or otherwise approved of the use of its marks on

---

[88]  *Fla. Int'l Univ. Bd. of Trustees*, 830 F.3d at 1261.

[89]  *See Trilink Saw Chain, LLC*, 583 F. Supp. 2d at 1316.

[90]  Pl.'s Br. in Supp. of Mot. for Summ. J., at 20.

[91]  Def.'s Resp. in Opp. to Pl.'s Mot. for Summ. J., at 14 [Doc. 47].

apparel.[92]  Whether the product exists prior to the consumer's order or is manufactured after the fact is not particularly relevant to the likelihood of confusion analysis.

Second, the Defendant argues that no confusion can arise because the Defendant posts disclaimers on its website stating that "[t]his store is not sponsored or endorsed by Savannah College of Art and Design."[93]  The Defendant contends that these disclaimers are prominently displayed and therefore confusion on the part of consumers is near-impossible. In response, the Plaintiff cites *Boston Hockey*. In *Boston Hockey*, the lower court found that the sale of replica patches bearing the plaintiff hockey teams' marks was likely to cause confusion, but determined that the defendant could continue to sell the patches if the defendant attached a disclaimer indicating that the replicas were unauthorized.[94]  The *Boston Hockey* panel rejected this approach on appeal, holding that "[o]nly a prohibition of the unauthorized use will sufficiently remedy the wrong" caused by "[t]he exact duplication of the symbol."[95]  While this section of the *Boston Hockey* opinion lends powerful support to the Plaintiff's position, the Court concludes that it is no longer good law. The panel's decision

---

[92]  *Burger King Corp.*, 710 F.2d at 1491-92.

[93]  Def.'s Resp. in Opp. to Pl.'s Mot. for Summ. J., at 14.

[94]  *Bos. Prof'l Hockey Ass'n, Inc.*, 510 F.2d at 1013.

[95]  *Id.*

regarding the proposed disclaimers flowed from its conclusion that "exact du-plication" necessarily results in confusion because the public will "identify" the marks as belonging to the mark owner. Because consumers would continue to identify the replica patches with the hockey teams regardless of whether a dis-claimer was attached, it followed that such disclaimers could not remedy the harm. But, as the Eleventh Circuit explained on appeal in this case, the *Boston Hockey* panel's approach to the likelihood of confusion analysis was incorrect. The Plaintiff cannot prevail merely by showing that consumers are aware that the Defendant's apparel bears marks belonging to the Plaintiff. The Plaintiff must also show that the consumers are thereby likely to be confused as to whether the use is authorized, which is not a showing that the *Boston Hockey* panel required the plaintiff hockey teams to make. The presence of disclaimers on the Defendant's website is therefore relevant to the likelihood of confusion inquiry. This factor weighs weakly in favor of the Defendant.

### 5. Similarity of advertising media

There is little in the record with which the Court can assess the similar-ity of the parties' advertising methods. It appears that both parties advertise their respective goods and services online. But, as the Defendant points out, "[t]hat the goods or services of the parties are both found on the Internet proves little, if anything, about the likelihood that consumers will confuse similar

marks used on such goods or services."[96] The Court concludes that this factor
is neutral.

### 6. Defendant's intent

"If it can be shown that a defendant adopted a plaintiff's mark with the
intention of deriving a benefit from the plaintiff's business reputation, this fact
alone may be enough to justify the inference that there is confusing similar-
ity."[97] There is no question in this case that the Defendant intended to copy
the Plaintiff's text marks. The Defendant insists that "intent to copy" is not the
same as "intent to confuse."[98] But in the Eleventh Circuit, evidence of a De-
fendant's intent to copy is relevant to the question of whether the Defendant
intended to confuse the consuming public. Indeed, the Eleventh Circuit has
held that an "[i]ntent to copy in itself creates a rebuttable presumption of like-
lihood of confusion."[99] The Plaintiff has not argued for the application of the
presumption in this case, but the Court nevertheless concludes that this factor
favors the Plaintiff.

---

[96]  4 McCarthy on Trademarks and Unfair Competition § 24:53.50 (5th
ed.).

[97]  *Frehling Enterprises, Inc.*, 192 F.3d at 1340 (citing *John H. Harland
Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir. 1983)).

[98]  Def.'s Resp. to Pl.'s Mot. for Summ. J., at 16-17.

[99]  *Babbit Elecs., Inc.*, 38 F.3d at 1179 (quoting *Bauer Lamp Co., Inc. v.
Shaffer*, 941 F.2d 1165, 1172 (11th Cir. 1991)).

### 7. Actual confusion

The Plaintiff admits that it does not have evidence showing that consumers have bought apparel from the Defendant under the mistaken belief that the apparel was licensed by the Plaintiff. The only evidence of actual confusion offered by the Plaintiff is an incident in which the parent of a student-athlete forwarded a link to the Defendant's website to the Plaintiff's employees and the employees were unsure whether the Defendant's use was authorized.[100] This evidence is wholly insufficient to support a finding of actual confusion. "Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion."[101] This factor weighs in favor of the Defendant.

After careful consideration of the seven likelihood of confusion factors, the Court concludes that the strength of the mark, the similarity of the marks, and the Defendant's intent all weigh heavily in favor of the Plaintiff on the likelihood of confusion. These factors greatly outweigh the lack of any evidence of actual confusion and questions surrounding the efficacy of the Defendant's disclaimers. The Plaintiff's motion for summary judgment should be granted.

### IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary

---

[100] Pl.'s Br. in Supp. of Mot. for Summ. J., at 23.

[101] *Amstar Corp.*, 615 F.2d at 263.

T:\ORDERS\14\Savannah College of Art and Design, Inc\msj2twt.docx

Judgment [Doc. 39] is GRANTED in part and DENIED in part and the Plaintiff's Motion for Summary Judgment [Doc. 40] is GRANTED. The Defendant's Motion to Strike Improper Evidence [Doc. 50] is GRANTED.

SO ORDERED, this 1 day of March, 2019.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge